## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| **ROBERT G. THOMPSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:07-00741** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered November 19, 2007 (Document No. 3.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 9 and 11.), and Plaintiff's Rebuttal. (Document No. 12.)

The Plaintiff, Robert G. Thompson, (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on December 19, 2005 (protective filing date), alleging disability as of May 15, 2002, due to severe pain in his shoulders, back, and neck; chronic arthritis; hypertension; possible diabetes; numbness in his hands and feet; a missing thumb on the left hand; stomach problems; depression; and blindness in one eye. (Tr. at 73, 74-77, 121-22, 226, 227-30, 232, 238.) The claims were denied initially and upon reconsideration. (Tr. at 37-39, 43-45, 231, 232-34, 237, 238-40.) On June 7, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 46-

49.) The hearing was held on March 20, 2007, before the Honorable Ronald L. Chapman. (Tr. at 256-92.) By decision dated April 27, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 19-29.) The ALJ's decision became the final decision of the Commissioner on October 5, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 5-8.) Claimant filed the present action seeking judicial review of the administrative decision on November 19, 2007, pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain

v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (c) Rating the degree of functional limitation. (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the

3

degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since May 15, 2002, the alleged onset date. (Tr. at 21, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from osteoarthritis, residuals of amputation of right thumb, and depressive disorder, which were severe impairments. (Tr. at 21, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 23, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity to perform medium exertional level work, with the following limitations:

> He could never climb ladders, ropes, and scaffolds. He can never balance. He could only occasionally stoop, crouch, and crawl. He would be limited in reaching in all directions, including overhead, because of a mild limitation of flexion and abduction in the shoulders. He should avoid concentrated exposure to cold, vibration, and hazards. He has problems with his hands, particularly his right dominant hand, in that he has no thumb on that hand. He cannot do the opposing grip plus any movement that would be made with the right thumb. He has problems with his non-dominant, left hand, in that his index finger has some problems with fine manipulation. He is limited in forward bending to about 70 degrees, rather than the normal 90 degrees. He would be limited to lifting from the tabletop. He has depression that affects his

5

recent memory.

(Tr. at 23-24, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past

relevant work. (Tr. at 27, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE")

taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a

kitchen helper and grounds keeper, at the medium exertional level, and as a boat renter clerk, at the

light exertional level. (Tr. at 28, Finding No. 10.) On this basis, benefits were denied. (Tr. at 28-29,

Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying

the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion. It consists of more than a mere scintilla of evidence but may be
> somewhat less than a preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the

Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the

record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch,

495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by

substantial evidence.

Claimant's Background

Claimant was born on September 10, 1954, and was 52 years old at the time of the

6

administrative hearing, March 20, 2007. (Tr. at 27, 74, 227, 260 .) Claimant had an eighth grade, or limited education, and a Generalized Equivalency Diploma. (Tr. at 27, 125, 260.) In the past, he worked as a job coordinator/maintenance supervisor, carpenter, and painter. (Tr. at 27, 122-23, 127-34, 262-66, 289.)

 The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to find (1) Claimant's blindness in his right eye as a severe impairment and (2) that Claimant's liver impairment met or equaled a Listing impairment. (Document No. 10 at 8-10.) Claimant further asserts that evidence submitted while the case was pending before the Appeals Council required a remand to the ALJ for its consideration. (Id. at 6-8.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 11 at 6-12.)

1. Blindness as a Severe Impairment.

Claimant first alleges that the ALJ erred in failing to find his blindness in the right eye as a severe impairment. (Document No. 10 at 8-9.) Claimant asserts that his vision is greatly impaired on the right and that he has no depth perception. (Id. at 9.) He therefore contends that his right eye blindness is more than a slight abnormality, which would have a minimal effect on his ability to work. (Id.)

The Commissioner asserts that the VE's testimony that Claimant's blindness was not instrumental to his ability to work, together with Claimant's reported activities demonstrates that

Claimant's blindness supports the ALJ's finding that Claimant did not have any significant work-related limitations due to blindness in his right eye. (Document No. 11 at 6-7.) Even if Claimant's right eye blindness were a severe limitation, the Commissioner asserts that based on the VE's testimony, Claimant would be capable of performing the identified jobs that did not require visual acuity, depth perception, or use of both eyes. (Id. at 7.) Thus, any error that the ALJ may have committed in not finding Claimant's right eye blindness as a severe impairment is harmless. (Id.)

In Reply, Claimant contends that his ability to persevere in his activities and work after losing vision in the right eye, does not preclude a finding of a severe impairment. (Document No. 12 at 4.) Claimant notes that his vision was lost as a result of the same accident in which he lost his thumb and the ALJ found the loss of a thumb to be a severe impairment. (Id.)

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2006). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed

above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

The evidence of record reveals that in 1975, Claimant accidentally shot himself with a twelve gauge shotgun while hunting, which resulted in the loss of his right thumb, the loss of vision in his right eye, and hearing difficulties. (Tr. at 183-85, 268, 277.) On consultative examination by Serafino S. Maducdoc, Jr., M.D., on March 14, 2006, Dr. Maducdoc noted that Claimant had an artificial eye on the right side and uncorrected vision on the left side of 20/30. (Tr. at 185.) Claimant reported that vision in his left eye was good with glasses. (Tr. at 184.)

Claimant contends that the loss of visual acuity, depth perception, and use of one eye, significantly limits his ability to perform work-related activities. As the Commissioner notes, however, Claimant's reported activities lends support to the ALJ's finding of a non-severe impairment. After losing his vision in his right eye in 1975 as a result of a hunting accident, Claimant continued to hunt, drive, and work as a job coordinator, carpenter, and painter. (Tr. at 26, 125, 127, 156, 159-60, 179, 262-66, 279-80 .) Additionally, Claimant obtained his GED in 1993, and was able to read the newspaper, bass fish, watch television, and manage his own finances. (Id.) Moreover, according to the testimony of the VE at the administrative hearing, neither visual acuity, depth perception, nor accommodations for both eyes would be needed for the jobs identified, that of a kitchen helper, grounds keeper, or boat rental clerk, if Claimant's good eye had 20/70 or better vision. (Tr. at 291.) As demonstrated by Dr. Maducdoc's examination, Claimant had 20/30 uncorrected vision in his left eye. (Tr. at 185.) Consequently, the ALJ found that because of Claimant's "uncorrected left side vision of 20/30," the blindness in his right eye was a non-severe impairment. (Tr. at 22.) Accordingly, the undersigned finds that any error that the ALJ may have committed in failing to find Claimant's right eye blindness as a severe impairment is rendered

harmless based on the VE's testimony, and that Claimant's argument on this issue is without merit. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (affirming the ALJ's decision despite error "because there is no question but that [the ALJ] would have reached the same result notwithstanding the initial error."); Frank v. Barnhart, 326 F.3d 618, 622 (5th Cir 2003); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")

2. Liver Impairment.

Claimant next alleges that the ALJ erred in failing to give greater consideration to whether his liver impairment met or equaled Listing 5.05. (Document No. 10 at 9-10.) Claimant asserts that the ALJ "gave very little attention to this impairment in his decision other than to say it is a non-severe impairment." (Id. at 10.) The Commissioner asserts that the evidence of record fails to demonstrate "a medically determinable liver impairment causing significant limitations." (Document No. 11 at 8.) He notes that the "ALJ found that [Claimant's] liver impairment was not even a severe impairment, let alone an impairment of listing level severity because there was no diagnosis of and no treatment for such an impairment." (Id.) The Commissioner notes that the only evidence of record relevant to a liver impairment was Dr. Maducdoc's observation that Claimant's enlarged liver possibly was indicative of cirrhosis. (Id.) However, there was no evidence of a definitive diagnosis, any limitations from the impairment, or evidence of treatment for the impairment. (Id.) Claimant did not even allege a liver impairment in any of his applications. (Id. at 9.) Consequently, the Commissioner asserts that Claimant's failure to produce any evidence related to a liver impairment "significantly undermines his argument that he had liver disease sufficient to meet listing 5.05." (Id.)

In Reply, Claimant notes that Dr. Maducdoc, who examined Claimant at the request of the

10

Agency, found an enlarged liver with corresponding loose stools three or more times a day for seven or eight years. (Document No. 12 at 4.) This evidence, Claimant alleges, demonstrated liver damage, "which should have been more fully evaluated by the [ALJ] prior to rendering his decision." (Id.) Though the ALJ reasoned that Claimant's liver impairment was a non-severe impairment because there was neither a diagnosis nor treatment records, Claimant asserts that Dr. Maducdoc's diagnoses of Hepatomegaly, possible cirrhosis of the liver, and possible abdominal mass in the epigastric area refute the ALJ's finding. (Id. at 5.) Furthermore, Claimant's lack of treatment readily was explained by his lack of medical insurance and inability to secure financially the necessary treatment. (Id.)

In his decision, the ALJ acknowledged Dr. Maducdoc's diagnoses on March 14, 2006, of chronic diarrhea, uncontrolled hypertension, abdominal pain of unknown etiology, hepatomegaly or possible cirrhosis of the liver, and possible abdominal mass of the epigastric area. (Tr. at 22.) Nevertheless, the ALJ found that the evidence of record neither contained "diagnoses or evidence of treatment for the above impairments." (Id.) Consequently, the ALJ determined that Claimant's impairments were non-severe. (Id.)

As noted above, during the consultative examination by Dr. Maducdoc, Claimant reported pain in the lower abdomen off and on for about five years. (Tr. at 184.) He reported that spicy foods bothered his stomach, but that he had no nausea or vomiting. (Id.) He further reported loose stools for approximately seven to eight years and that his bowel movements were frequent and occurred approximately three times a day. (Id.) On examination, Dr. Maducdoc observed tenderness in the epigastric area and a vague, non-moveable epigastric mass, which was tender on palpation, as well as a palpable liver edge about two finger breadths below the coastal margin. (Tr. at 185.) Consequently, Dr. Maducdoc diagnosed, inter alia, abdominal pain of unknown etiolgoy; hepatomegaly, possible cirrhosis of the liver; possible abdominal mass of the epigastric area; and

chronic diarrhea. (Id.) The record contains no further reference to these conditions, or possible conditions.

Despite Claimant's allegations that the ALJ should have explored more thoroughly Dr. Maducdoc's diagnoses, the undersigned finds that Claimant has failed to allege any limitations resulting from any stomach or liver problems, which would preclude his ability to perform work-related activities. The diagnoses alone are not sufficient to establish disability. Without evidence of significant limitations, the ALJ was constrained to find that Claimant's liver impairment was a non-severe impairment. Consequently, the evidence was insufficient to establish a Listing level impairment, as well. Accordingly, the undersigned finds that the ALJ properly found that Claimant's liver impairment was non-severe and that he was not required to order further evaluations or tests to determine the extent of Claimant's liver impairment.

3. New Evidence.

Finally, Claimant alleges that the new evidence submitted to the Appeals Council regarding Claimant's complaints of back and neck pain warrants remand of this matter. (Document No. 10 at 6-8.) Claimant asserts that the new evidence addresses the ALJ's statements in his decision regarding lack of treatment, lack of prescription pain medication, and lack of evidence of compromise of the nerve root, spinal arachnoiditis, or lumbar spinal stenosis. (Id. at 6.) Claimant further asserts that the new evidence supports Claimant's severe complaints of pain and would supplement the ALJ's pain and credibility assessment, in which the ALJ cited a lack of objective evidence supporting Claimant's pain and complaints. (Id. at 7.) Finally, Claimant assert that his lack of medical insurance constitutes good cause for his failure to incorporate the evidence into the previous record before the ALJ. (Id. at 8.)

The Commissioner asserts that the evidence submitted to the Appeals Council does not merit

remand. (Document No. 11 at 9-12.) Specifically, the Commissioner asserts that the new evidence demonstrating degenerative joint disease confirms the diagnosis of osteoarthritis, which was accepted by the ALJ. (Id. at 9-10.) In assessing Claimant's pain and credibility, the ALJ specifically found that Claimant's osteoarthritis "could reasonably be expected to produce the alleged symptoms." (Id. at 10.) Thus, because the ALJ gave Claimant the benefit of the doubt with regard to the threshold prong of the pain and credibility analysis, the Commissioner asserts that the new evidence would not change the ALJ's decision. (Id.)

Claimant further asserts that the examination reports from Dr. Silk and Dr. Dowdy essentially confirm Dr. Maducdoc's initial findings. (Document No. 11 at 10.) The Commissioner notes that the clinical findings do not document significant limitations beyond those limitations assessed by the ALJ. (Id. at 10-11.) Furthermore, the Commissioner asserts that the ALJ properly relied on the only two medical source opinions of record, which indicated that Claimant was capable of performing medium exertional work. (Id. at 11.)

The Commissioner notes that despite having been prescribed prescription medication by Dr. Silk, Claimant was unable to afford the medication and continued to be treated solely with over-the-counter medication. (Document No. 11 at 11.) He also notes that Dr. Silk did not recommend surgery, and therefore, Claimant's treatment remained the same after the ALJ's decision. (Id.) Finally, the Commissioner asserts that the new evidence fails to evidence any change in Claimant's daily activities. (Id. at 11-12.) The Commissioner thus contends that the new evidence submitted to the Appeals Council is consistent with the evidence considered by the ALJ, and therefore, does not merit remand. (Id. at 12.)

In Reply, Claimant argues that the new evidence "could make a more thorough analysis with respect to pain, credibility and transferability of skills." (Document No. 12 at 1-2.) Claimant asserts

13

that because Claimant's insurance status has expired and he does not qualify for SSI, he most likely will not be able to file for DIB in the future. (Id. at 2.) Despite the Commissioner's argument that the ALJ recognized osteoarthritis as a severe impairment, and therefore, the evidence submitted to the Appeals Council is neither new nor material, Claimant asserts that the new evidence confirms Dr. Williams' statements for a need for imaging studies and a neurological evaluation. (Id. at 3.) Finally, Claimant contends that the Commissioner unfairly has used against him his inability to afford prescription medications. (Id.)

The Appeals Council specifically incorporated the new evidence into the administrative record. As a result, the Court must review the record as a whole, including the new evidence, in order to determine if the Commissioner's decision is supported by substantial evidence. Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991). Under the fourth sentence of 42 U.S.C. § 405(g), the court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97-98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163.

To justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[5]

_____

[5] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in *Borders* provides the proper test in this circuit for remand of cases involving new evidence. This court will apply the standard set forth in Borders in accordance with the reasoning

14

In Borders, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met:  (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence.  Id.

The evidence submitted to the Appeals Council includes radiology reports, a report and follow-up note from Dr. Silk, and treatment notes from Dr. Dowdy. (Tr. at 243-52.) Claimant underwent a CT Scan of his lumbar spine on May 22, 2007, which revealed diffuse disc protrusions at L4-5 and L5-S1 with mild effacement of the overlying thecal sac and both lateral recesses. (Tr. at 243.) However, there was no evidence of disc herniation or frank spinal stenosis, though there was evidence of diffuse facet degenerative changes. (Id.) The x-rays of Claimant's cervical spine on the same date revealed evidence of early facet joint arthritis. (Tr. at 244.) Further x-rays of Claimant's thoracic spine demonstrated mild to moderate degenerative changes and widespread small anterior

previously expressed in this district:

> The court in *Wilkins v. Secretary of Dep't of Health & Human Servs.*, 925 F.2d 769 (4th Cir. 1991), suggested that the more stringent  Borders four-part inquiry is superseded by the standard in 42 U.S.C. 405(g).  The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." However, Borders has not been expressly overruled.  Further, the Supreme Court of the United States has not suggested that *Borders'* construction of §  405(g) is incorrect.  Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent *Borders* inquiry.

*Brock v. Secretary, Health and Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D. W.Va. 1992) (citations omitted).

osteophytes and x-rays of the lumbar spine evidenced early degenerative changes with anterior osteophytes and a loss of disc space height at several levels. (Tr. at 245-46.)

On July 3, 2007, Dr. Adnan N. Silk, M.D., conducted a neurosurgical evaluation of Claimant, on the referral by Dr. Matthew Arvon. (Tr. at 247-48.) Claimant complained of neck pain and low back pain for several years resulting from motor vehicle accidents and work injuries. (Tr. at 247.) Claimant reported that his neck pain radiated from the cervical area down to both shoulders and that his back pain radiated from the lumbar area down to the left leg. (Id.) He further complained of numbness in the right leg. (Id.) On physical examination of Claimant's neck, Dr. Silk noted no tenderness in the posterior aspect of the neck or limitation of neck motion. (Id.) Claimant was able to elevate his shoulder very well and had good flexion and extension of both arms, though he had some deformity of his hands due to a gun shot to his hands. (Id.) Dr. Silk further noted that Claimant's reflexes were hypoactive in his upper extremities. (Id.)

Regarding Claimant's back, Dr. Silk noted tenderness in the lumbar area in the midline, with forward bending slightly reduced at seventy degrees with pain and straight leg raising at seventy degrees bilaterally with pain. (Tr. at 248.) He noted that Claimant had good flexion and extension of both legs and slight weakness of the dorsiflexion of the big toe bilaterally. (Id.) Reflexes were normal, though he had decreased sensation to pinprick in the lateral aspect of the left leg. (Id.) Dr. Silk diagnosed cervical spondylosis, lumbar spondylosis, and bulging discs at multiple levels. (Id.)

On July 23, 2007, Claimant returned to Dr. Silk for a follow up evaluation, and reported continued pain in his back and left leg. (Tr. at 249.) Dr. Silk noted that a myelogram and CT scan of Claimant's lumbar area revealed lumbar spondylosis and bulging discs at L4-5 and L5-S1 with no herniated discs. (Id.) Cervical spine x-rays revealed cervical spondylosis. (Id.) Claimant indicated that he was unable to have physical therapy because he lived far away from the place of therapy.

16

(Id.)

On examination, Dr. Silk noted tenderness along the entire spinal axis from the cervical area down to the lumbar area with no focal deficits in the upper extremities. (Id.) Claimant had tenderness in the lumbar area in the midline and forward bending at seventy degrees. (Id.) Furthermore, straight leg raising was positive at seventy degrees bilaterally. (Id.) Dr. Silk prescribed Lyrica 75mg. (Id.)

Finally, the new evidence submitted to the Appeals Councils reveals Claimant's examination on August 14, 2007, by Amy Dowdy, D.O. at Access Health Rural Acres. (Tr. at 250-52.) Claimant complained of back pain radiating to his left leg. (Tr. at 250.) He reported that despite being prescribed Lyrica by Dr. Silk, he was unable to afford the medication. (Id.) Claimant denied diarrhea, nausea, or vomiting. (Tr. at 251.) On examination, Dr. Dowdy noted tenderness of Claimant's right upper cervical spine and tenderness to palpation of the lumbar spine without radiation. (Id.) Sensation and reflexes were normal. (Id.) Dr. Dowdy assessed chronic back pain, degenerative joint disease of the back, and uncontrolled hypertension. (Tr. at 252.) She prescribed Naprosyn 500mg, Neurontin 300mg, and Atenolol 25mg. (Id.) She further instructed Claimant to diet and exercise. (Id.)

With regard to the new evidence submitted, the undersigned finds that Claimant has not satisfied all four factors of Borders, and therefore, remand is inappropriate. Specifically, the Court finds that the evidence is not material. The ALJ determined that Claimant's osteoarthritis of his lower back, upper neck, left shoulder, hands, feet, and left leg collectively was a severe impairment. (Tr. at 22.) The ALJ further determined that Claimant's osteoarthritis however, did not satisfy the criteria under Listing 1.04 because there was no evidence of "compromise of a nerve root or the spinal cord, spinal arachnoiditis, or lumbar spinal stenosis." (Tr. at 23.) The medical records

17

submitted to the Appeals Council simply reference Claimant's complaints of neck and back pain, and reveal diagnoses by radiological reports of cervical spondylosis, lumbar spondylosis, and bulging discs, with degenerative changes. (Tr. at 249.) The radiology reports specifically state that there was "[n]o convincing disc herniation or frank spinal stenosis." (Tr. at 243.) Thus, the evidence is somewhat cumulative of the evidence considered by the ALJ and probably would not have changed the ALJ's decision through the first three steps of the sequential analysis.

The undersigned further finds that the evidence submitted to the Appeals Council would not have changed the ALJ's pain and credibility assessment. As the Commissioner notes, the ALJ found that Claimant's osteoarthritis could reasonably be expected to produce his alleged symptoms. (Tr. at 25.) The ALJ determined however, that Claimant's statements regarding the intensity, persistence, and limiting effect of his symptoms were not entirely credible. (Id.) This finding was in part due to inconsistencies in the record. (Tr. at 26.) Specifically, the ALJ noted that Claimant reported that his most significant pain was the back pain, which he rated at a ten on a scale of one to ten. (Id.) Nevertheless, Claimant took only over-the-counter pain relievers, which reduced the pain to a level eight. (Id.) Though Claimant argues that the ALJ improperly considered Claimant's lack of financial means against him, Claimant failed to demonstrate that he sought, but was denied medical treatment due to the inability to pay for it prior to the ALJ's decision.[6] Subsequent to the hearing, Claimant

---

[6] Social Security Ruling 96-7p provides that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." While the Commissioner may not deny a claimant benefits on the basis of a failure to seek treatment due to a lack of funds, *see Mickles v. Shalala*, 29 F.3d 918, 929-30 (4th Cir. 1994); *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986), the undersigned finds that Claimant has not demonstrated that he sought, and was denied medical treatment due to a lack of funds, as evidence by his ability to secure treatment through community support after the issuance

was able to secure treatment through community support and other means, but he failed to demonstrate why he could not secure such treatment prior to the ALJ's decision.

Furthermore, Claimant testified that sitting increased his pain and that he could not sit longer than one to one and one half hours. (Tr. at 26, 281-82.) However, the ALJ observed that Claimant sat for one and one half hours during the administrative hearing and showed no signs of discomfort. (Tr. at 26.) Additionally, despite Claimant's testimony that he was unable to make a fist with his left hand (Tr. at 269.), on examination by Dr. Maducdoc, he was able to make a fist and appose his fingers. (Tr. at 26, 185.) Moreover, Dr. Maducdoc noted normal grip strength and fine manipulation. (Id.)

The ALJ also assessed Claimant's reported activities, as discussed above. (Tr. at 26.) The ALJ noted that Claimant took care of his own hygiene and grooming independently and adequately, occasionally accompanied his wife shopping, drove and put gas in his vehicle, and enjoyed bass fishing and hunting. (Tr. at 26, 179-80, 279-80.) Additionally Claimant reported that he laid around and watched television. (Id.)

The other reason for discrediting Claimant's complaints was based on the lack of objective medical evidence. (Tr. at 26-27.) Though the evidence submitted to the Appeals Council confirms diagnoses of spondylosis, the evidence fails to demonstrate any limitations resulting from Claimant's physical impairments that were not considered by the ALJ. Dr. Caroline Williams, M.D., was the only medical source to assess Claimant's limitations, and she specifically reviewed Dr. Maducdoc's evaluation, as well as Claimant's reported activities and subjective complaints of pain. (Tr. at 27, 213-20.) Dr. Williams opined that Claimant was capable of performing work at the medium

of the ALJ's decision.

19

exertional level, with postural, manipulative, and environmental limitations. (Tr. at 27, 214.) Dr. Amy Wirts, M.D., reviewed and affirmed Dr. Williams' March 30, 2006, assessment on April 20, 2006. (Tr. at 222.) The ALJ properly relied upon the opinions of these state agency physicians. See 20 C.F.R. §§ 404.1527(f)(2)(i); 416.927(f)(2)(i) (2006). The new evidence submitted to the Appeals Council does not reflect any significant limitations beyond those considered by Dr. Williams, Dr. Wirt, and consequently, the ALJ. For these reasons the undersigned finds that Claimant has not satisfied all four of the Borders requirements, and therefore, that remand for consideration of the evidence submitted to the Appeals Council is unwarranted.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 9.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 11.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: February 26, 2009.

R. Clarke VanDervort
United States Magistrate Judge

21